15 N.J. Super. 1 (1951)
83 A.2d 21
LAURENA LILLY, PETITIONER-RESPONDENT,
v.
GUERIN TODD, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 16, 1951.
Decided July 26, 1951.
*2 Before Judges EASTWOOD, LLOYD and STANTON.
*3 Mr. Edmund J. Canzona argued the cause for the petitioner-respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
Mr. Arthur F. Mead argued the cause for the respondent-appellant (Messrs. Cox & Walburg, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
This is a workmen's compensation case. Both the deputy director of the Workmen's Compensation Division, New Jersey Department of Labor, and the judge of the Monmouth County Court, on appeal, determined that the employee, Laurena Lilly, had suffered an accident arising out of and in the course of her employment; that the employer had due and timely notice thereof and that she suffered total permanent disability.
On this appeal, the employer contends: (1) "that the petitioner's present condition of hemiplegic state is not the result of the accident of December 17, 1948" and (2) "the refusal of the Deputy Director to grant a continuance to take the medical testimony of Dr. Pignataro precluded the respondent from meeting a medical theory advanced by the petitioner for the first time at the trial."
A summarization of the record reveals the following factual situation: Laurena Lilly, 58 years of age, employed in the home of the appellant as a domestic servant, while alone on December 17, 1948, slipped on a rug, falling to the floor on her back and striking her head, elbow and knee. She was unable to arise for approximately an hour and a half thereafter; when she finally got up, she went to her room and to bed. The following morning she went downstairs to get her breakfast and informed Mrs. Todd of the accident and that she was "hurting all over," whereupon Mrs. Todd directed her to go back to bed and called a Dr. Herman O. Wiley to treat her. She remained in bed thereafter until Monday, December 20, 1948, when she arose to go to the bathroom; following the completion of her toilet, as she attempted to *4 get up, she felt herself "go limp." It was ascertained that she suffered the left side hemiplegia and has been totally and permanently disabled ever since. At the trial, four medical doctors testified on behalf of the employee, viz.: Dr. Wiley, the treating physician, who first saw the petitioner on the day after the accident; Dr. James B. Spradley and Dr. Edward Dengrove, specialists in the field of head injuries and neurology, and Dr. George E. Meehan, specializing in the field of industrial medicine. All of whom testified, in their respective opinions, that the petitioner's total disability was caused by and is the direct and proximate result of the accident of December 17, 1948. The only medical witness testifying for the employer was Dr. Joseph G. Villapiano, who examined the employee on one occasion, May 4, 1949. Dr. Villapiano testified that it was his opinion that the petitioner's total disability was not causally related to the accident, stating:
"I think the hypertensive cardiovascular disease, the generalized arteriosclerosis, the hypertrophic osteoarthritis and the osteomyelitis of the extremity that was involved due to a previous accident, I thought that this patient was, from those generalized conditions and chronic systemic progressive conditions, was at least 50 per cent totally disabled prior to the alleged accident."
In addition, on behalf of the employer, the medical report of one Dr. Frank P. Pignataro, neurologist, was admitted into evidence without objection. Dr. Pignataro examined the employee on one occasion, January 8, 1949, his conclusion from such examination being:
"It is my feeling that this patient sustained a spontaneous Cerebral Thrombosis on a sclerotic basis in the right lenticulostriate area of the brain resulting in a left-sided hemiplegia. I saw no evidence for a subdural or epidural hematoma. The role of trauma in the etiology of this syndrome is questionable."
As is apparent in so many similar cases, this appeal is not predicated upon an absence of any competent evidence justifying the prior concordant determination. Link v. Eastern *5 Aircraft, &c., General Motors Corp., 136 N.J.L. 540 (E. & A. 1948). The comment of Mr. Justice Heher in his concurring opinion in Temple v. Storch Trucking Co., 3 N.J. 42 (1949) is applicable here:
"Ordinarily, the function of the appellate court in the review of a judgment in an action at law is the correction of errors of law, and not the trial of the issue de novo on the record and the evidence returned therewith. Rule 1:2-20 of this court, adopted September 15, 1948, in the exercise of the rule-making power granted by the Constitution of 1947, authorizes the court to make `new or amended findings of fact' on a review of any cause involving issues of fact not determined by the verdict of a jury. This review is not the absolute right of the dissatisfied litigant. The power is purely permissive; and it would seem that its exercise is in the sound discretion of the court to serve the ends of essential justice in the individual case, usually where the findings of fact are palpably erroneous or new evidence is adduced under the court's original jurisdiction conferred by Article VI, section V, paragraph 3 of the Constitution of 1947. The rule enjoins due regard, in the exercise of this function, to the opportunity had by the trier of the facts to judge of the credibility of the witnesses."
In Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440, 447 (1949), Judge Bigelow, speaking for the Appellate Division, said:
"While this court is empowered to make `new or amended findings of fact' (Rules 1:2-20 and 4:2-6; Carpenter v. Calco Chemical, etc., Co., 4 N.J. Super. 53), the power should be exercised sparingly. Although the County Court did not hear the witnesses, but determined the case from a reading of the same evidence that is before us, still we should accord much weight to its finding of fact and not disturb it unless we are well satisfied that the finding is a mistaken one."
The rule that if the concordant conclusions of the deputy director and of the county court on appeal are based on competent evidence they will not be lightly disturbed is a salutary one. Morgan v. Letwenske, 6 N.J. Super. 67 (App. Div. 1949); Galloway v. Ford Motor Co., 7 N.J. Super. 18 (App. Div. 1950); affirmed 5 N.J. 396 (1950); Kuperstein v. Gude & Cole Corp., 7 N.J. Super. 200 (App. Div. 1950).
*6 With respect to appellant's contention that the employee's total disability is the result of some cause unrelated to the accident, our courts have held that where this defense is asserted, the burden of establishing it is upon the one who alleges it. Calicchio v. Standard Brands, 1 N.J. Super. 276, 279 (App. Div. 1949), and cases cited therein. The appellant failed to successfully bear that burden. The nature of the injuries suffered by the employee here, the degree of its consequential disability, and the causal relationship between the accident and the injury, were substantiated by the testimony of several reputable physicians. Probability and not the ultimate degree of certainty is the test. Russo v. Wright Aeronautical Corp., 1 N.J. 417 (1949).
Our examination of the record convinces us that the Monmouth County Court correctly determined that the employee's total disability is the natural and probable consequence of the accident of December 17, 1948. Sunkimat v. Senger Coal & Ice Corp., 137 N.J.L. 103 (Sup. Ct. 1948).
We find no merit in appellant's contention that there was an abuse of discretion on the part of the county court in refusing to remand the case to the Workmen's Compensation Division for the purpose of taking the testimony of Dr. Pignataro. Dr. Pignataro had examined the employee on January 8, 1949. The deputy director of the Division notified counsel on June 12, 1950, that the hearing date had been set for July 25, 1950. The appellant's attorney wrote the deputy director on June 16, stating the trial date was agreeable. No effort was made by appellant to have Dr. Pignataro present at the hearing until the evening of July 24, when Dr. Pignataro then informed the representative of the insurance carrier of his inability to be present because of scheduled operations. No further effort was made on the day of the hearing to produce Dr. Pignataro and a motion for a continuance was not made until the conclusion of the trial. It was then that the report of Dr. Pignataro was admitted in evidence without objection. Under the circumstances, we think there was no abuse of discretion on the part of the county judge in refusing *7 to remand the case to the Division for the taking of Dr. Pignataro's testimony. In view of the fact that Dr. Pignataro's report of his examination was admitted in evidence and his conclusions state that "The role of trauma in the etiology of this syndrome is questionable," we find that the appellant did not suffer any manifest injury or injustice. Certainly, it is apparent that Dr. Pignataro's testimony would not have contributed any weight to the appellant's theory of the case.
The judgment of the county court is affirmed, with costs.